## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| PATRICIA LaBRECQUE, as mother and next friend of T.N., | )<br>)<br>) | |
| Plaintiff | )<br>) | |
| v. | )<br>) | Docket No. 06-16-P-S |
| SCHOOL ADMINISTRATIVE DISTRICT NO. 57, et al., | )<br>)<br>) | |
| Defendants | ) | |

### *MEMORANDUM DECISION AND ORDER ON MOTION TO COMPEL ANSWERS[1]*

All of the defendants move to compel answers to questions that were propounded to the plaintiff, T.N. and Jason O'Brien during the taking of their depositions on August 1, 2006. Defendants' Motion to Compel Answers to Questions Propounded in Depositions, etc. ("Motion") (Docket No. 147) at 1-2. Those depositions were convened in accordance with my order entered on July 20, 2006, after the deponents failed to appear for deposition on the previously agreed date of July 19, 2006. Docket No. 125. I grant the motion.

Counsel for the plaintiff instructed the minor, T.N., not to answer the question "When you got to school on the morning of November 2, 2005, do you remember where you went first?" Deposition of TN ("T.N. Dep.") (Attachment 1 to Motion) at 18, 21. As the basis for his instruction, counsel asserted T.N.'s Fifth Amendment rights; said that the plaintiff and Mr. O'Brien had instructed counsel

---

[1] The issuance of this decision was delayed pending the resolution of the plaintiff's interlocutory appeal to the First Circuit. Docket No. 159. That appeal has now been denied. Judgment (United States Court of Appeals for the First Circuit, November 27, 2006) (Docket No. 171).

1

"that they do not want me to permit counsel, without a clear court order anyway, . . . to be required to testify about any matters that cross those lines [established by the Fifth Amendment and the therapist-patient privilege];" and also stated that counsel for the defendants "have listened to and reviewed [the] tape [recording of the questioning of T.N. by the deputy sheriff or police on November 2, 2005]." *Id*. at 20-21. The plaintiff's counsel again directed T.N. not to answer the question "Is [the cafeteria] the first place you went when you went to school?" *Id*. at 22. He did so again when T.N. was asked "What time does [breakfast] end?" *Id*. at 23. He again stated that he was doing so "on the client's instructions." *Id*. He directed T.N. not to answer several more questions, including "How do you get from the cafeteria to the 8th grade girls' bathroom?", *id*. at 28; and "Do you know about what time it was [when you spoke with someone from the York County Sheriffs' Department]?", *id*. at 29. Eventually, the plaintiff's counsel agreed that he was going to instruct T.N. "not to answer any questions about where she was, who she was with, who she talked to, what was said to her and what she said to anybody on November 2, 2005" in connection with the school incident. *Id*. at 34.

> Counsel for the plaintiff then stated that
>> there are certain areas that you can get into that I don't have any problem with. I think, . . . certainly the information you wouldn't otherwise have at your disposal such as her emotional distress and reactions and physical things, I think you can get into. We may have some issue with respect to crossing the line into psychotherapist/patient privilege, and I'll just try to address that if and it arises; but I think you're entitled to all of that information.

*Id*. at 36. After an off-the-record discussion, one of the attorneys for the defendants stated that he was going to suspend the deposition and seek a judicial resolution of the issues that had arisen. *Id*. at 39. The plaintiff's attorney responded that "each of these depositions scheduled for today in their entirety violate the Access to Justice Act." *Id*. After further discussion among the lawyers, the deposition was suspended. *Id*. at 47.

2

The deposition of the plaintiff followed.  She answered a few preliminary questions. Deposition of Patricia LaBrecque ("Plaintiff's Dep.") (Attachment 2 to Motion) at 3-4.  After counsel asked the question, "I'd like to draw your attention to November 2, 2005 and ask you whether you spoke with TN while she was at school that day?", her attorney said "Objection, Fifth Amendment, parent/child privilege.  Per the parents' and child's instructions, instruction not to answer . . . ." *Id.* at 4.  In response to a question from defense counsel, the plaintiff's attorney stated that the Fifth Amendment privilege being invoked was that of T.N. and that of the plaintiff "[t]o the extent that there may be some assertion or potential for some criminal charge against this parent such as aiding and abetting." *Id*. at 4-5.  Her attorney allowed the plaintiff to answer questions about her discussions with any representatives of the York County Sheriff's Department on that day, "subject to . . . the continuing objection with respect to these things as to access to justice." *Id*. at 6-7.  However, he directed her not to answer questions about what she said to these individuals, and then directed her not to answer further questions on this subject. *Id*. at 8-9.  He also directed her not to answer questions about her conversations with Jason O'Brien regarding the events of that day. *Id*. at 9-10.  When defense counsel asked the plaintiff about any conversation she had with other students or the parents of other students at MSAD 57, the plaintiff's second lawyer asserted the work-product privilege. *Id*. at 10.  The plaintiff's attorneys took the position that any conversation the plaintiff may have had with others regarding law enforcement officers interviewing MSAD 57 students when one of her lawyers was present is "work product protected" and that this protection extends to the identity of those persons. *Id.* at 15, 17.  The plaintiff answered several questions from each defense attorney, *id*. at 21-35.  After a telephone conversation with Magistrate Judge Kravchuk, the deposition was suspended by agreement. *Id*. at 36.

The deposition of Jason O'Brien was convened immediately thereafter. Suspended Deposition of Jason O'Brien ("O'Brien Dep.") (Attachment 3 to Motion). The deponent was not present. *Id.* at 2. Defense counsel stated that he would pursue the same areas of inquiry with O'Brien as he had with the plaintiff and T.N., and the plaintiff's attorney stated that "the same objections would . . . apply." *Id*. The defendants have now moved, jointly, to require the plaintiff, T.N. and O'Brien to answer the questions put to them at deposition. Motion at 1-2.

The defendants point out that many of the specific events about which they seek to question the plaintiff are described in affidavits which she filed in this court in support of her motions for a temporary restraining order and for contempt and in the complaint itself. Motion at 5-6. They contend that the plaintiff and O'Brien lack any reasonable ground to apprehend danger from answering their questions and thus have no Fifth Amendment privilege on which to base their refusal to respond, that there is no basis on which O'Brien may claim a parent-child privilege, that the parent-child privilege does not exist, that the Access to Justice Act does not create a privilege of any kind, that the work-product doctrine does not apply to testimony and that while T.N. may invoke the Fifth Amendment as to certain questions, the use of that privilege at the deposition far exceeded in scope what is permissible. Motion at 9-15.

Asserting that "most of the relevant facts are easily established" and may be obtained from "letters from Defendant Superintendent Green and the tapes of the interrogations of SAD 57 students," the plaintiff contends that "there were significant relevant areas of inquiry about which the witnesses were willing to and, in fact, did testify," and that "[t]he only questions that Plaintiff LaBrecque and TN were unwilling to answer were related to the on-going investigation." Plaintiff's Opposition to Defendants' Motion for Sanctions [sic] ("Opposition") (Docket No. 150) at 1, 3. She contends that "[t]he issue before this Court is how to balance the Plaintiff's fundamental Fifth Amendment Rights in

4

a civil rights action against the defendants' right to a fair trial." *Id*. at 5. I assume that she means to refer to T.N.'s fundamental rights. She asserts that the claims she has raised in this action "can and must be determined without regard to TN's guilt or innocence, but only after the threat of criminal prosecution is removed." *Id*. at 6. She takes the position that she is entitled to a stay of this action unless and until the "Police and County Defendants . . . grant TN immunity." *Id*. at 7-8. She asserts that the Fifth Amendment protects T.N. from questions "relating in any way to alleged criminal activity." *Id*. at 9. She purports to distinguish the case law cited by the defendants with respect to her invocation of a parent-child privilege but does not address the defendants' argument concerning O'Brien and does not cite any case law in support of her position. *Id*. at 10-12. She disavows any reliance on the Access to Judgment Act and asserts that she, T.N. and O'Brien have "the fundamental constitutional right to access to justice," *id*. at 12, although she does not explain where that right is found or how it has been infringed, nor does she cite case law supporting her position.

I will address the depositions subject to the motion in the order in which they were convened.

## I. T.N.

The defendants concede that "[t]here are certain areas of inquiry about which TN may assert a Fifth Amendment privilege." Motion at 9. They correctly point out that the privilege only extends to compelled testimony that is incriminating. *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 189 (2004). It "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Id*. at 190 (citation omitted). Most of the questions which T.N. was directed not to answer, or to which counsel for the plaintiff indicated that he would so direct her, and all of the questions quoted above, cannot reasonably be considered to be within this defined area. The burden of establishing the applicability of the privilege rests on the party asserting it. *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262

5

F.Supp.2d 302, 306 (S.D.N.Y. 2003). The only questions appearing in the transcript of T.N.'s deposition which she may refuse to answer on the basis of the Fifth Amendment, in light of the plaintiff's opposition as filed, are the following: page 26, lines 6-7, 21-24; page 28, lines 21-22; page 29, lines 1-4; page 32, lines 18-20, 23-25; and page 33, lines 11-12.

The plaintiff also contends that the defendants are not entitled to ask T.N. any questions about what happened on November 2, 2005 because some of the defendants have a tape recording of what was said during an interview of T.N. conducted by a member of the York County Sheriff's Department on that day. Opposition at 6. Since none of the school defendants was involved in that interview, they cannot be deemed to have knowledge of its contents, in the absence of a showing to the contrary. With respect to the county defendants, a tape recording will not necessarily record the actions that allegedly made T.N. feel coerced to speak, as the plaintiff has alleged. This argument does not support the plaintiff's position with respect to the deposition of T.N.

Finally, the plaintiff returns to her contention that she is entitled to a stay of her action "pending resolution of the criminal proceeding." *Id*. There is no evidence in the record of this case that any criminal proceeding currently exists. The plaintiff has asserted, and the law enforcement defendants have not denied, that a criminal investigation is currently pending that may possibly lead to charges against T.N. The plaintiff contends that "imposing a stay under the circumstances of this case will not unduly prejudice the defendants, because the suit was filed before most of the causes of action asserted even accrued." *Id*. at 6-7. The plaintiff offers no indication of the length of time that might possibly be involved in such a stay; she does not even mention an applicable statute of limitations. The prejudice to the defendants, many of whom are not involved in law enforcement,[2] resulting from an

---

[2] The plaintiff's assertion, Opposition at 7, that "the defendants should not be heard to complain about a conflict[] which they themselves created and they themselves could resolve" — the decision "to claim that investigation was on-going" — paints with far too broad a brush. The plaintiff has offered no evidence whatsoever that the defendants other than the county defendants were involved in (*continued on next page*)

6

extended delay is actually quite obvious. The authority cited by the plaintiff in support of her position on this point is distinguishable.

In *Wehling*, the plaintiff "ask[ed] only that discovery be stayed until all threat of criminal liability ha[d] ended." 608 F.2d at 1087. At the time the plaintiff asked the trial court for such a stay, "under the applicable statute of limitations, [he] was threatened with potential criminal prosecution" for "approximately three years," and by the date of the Fifth Circuit's decision, only nine months. *Id.* at 1084, 1088-89. The plaintiff has not mentioned the period of time that would be involved in this case.

In *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215 (3d Cir. 2003), both parties had suggested the alternative of staying the case, but the trial court dismissed the case with prejudice when the plaintiff stated that he would assert his Fifth Amendment privilege at deposition "[w]ith respect to the Information handed down by the Federal Grand Jury" in which the plaintiff was named, but not charged, as a co-conspirator, *id*. at 216-17. The criminal matter at issue was concluded two and a half years after the plaintiff had taken this position, and before the appeal was decided by the Third Circuit. *Id*. The plaintiff advised the defendant that he was then available for deposition, but the defendant took the position that too much time had passed. *Id*. at 217. The Third Circuit held that the dismissal of the case with prejudice by the trial court was an abuse of discretion and that, under the circumstances, the trial court should have placed the case on the inactive list as the parties requested until the plaintiff was "no longer under the cloud of criminal prosecution." *Id*. at 219.

In *Steiner v. Minnesota Life Ins. Co.*, 85 P.3d 135 (Colo. 2004), the court did not, as the plaintiff suggests, "follow[] *Wehling* in staying discovery in civil matters until related pending criminal matters are resolved," Opposition at 8. That court merely reversed a dismissal based on the

---

any such decision or had any power to make such a decision.

plaintiff's invocation of the Fifth Amendment because the trial court had made no effort to determine whether the plaintiff's Fifth Amendment claims were valid and did not consider any remedies short of dismissal, which could include a stay of discovery. 85 P.3d at 142-43.

Finally, the First Circuit in *In re Carp*, 340 F.3d 15 (1st Cir. 2003), may, as the plaintiff asserts, have "affirmed a decision in which a stay was imposed" but it most certainly did not "suggest[] that the correct course of action is to stay the civil proceeding." Opposition at 8. The issue in that case was whether the bankruptcy court should not have allowed the debtor who had invoked the Fifth Amendment to oppose all discovery to testify at the hearing on an adversary proceeding that was scheduled after a related criminal prosecution had ended, or have entered a default against the debtor, or have allowed the drawing of an adverse inference from the earlier refusal. 340 F.3d at 20, 22-24. The First Circuit held merely that the creditor had waived these claims by failing to raise them in the bankruptcy court in a timely fashion. *Id*. at 23-24. The plaintiff places far too much weight on the First Circuit's *dictum*, while describing the factual background of the appeal, that "[t]he bankruptcy court had wisely continued the case until the outcome of the criminal prosecution was finally determined." *Id*. at 21. There is no sense in which the First Circuit was asked in *Carp* to rule on whether the stay was required under the circumstances. There is no indication that the parties agreed on the stay.

Here, only the plaintiff has requested a stay. The defendants have not sought dismissal of the action. They have sought a solution which balances their need for information and their desire for resolution of the claims against them with T.N.'s Fifth Amendment rights. That is what the First Circuit has indicated that trial courts should do. *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996).

The plaintiff offers no argument in support of her counsel's invocation during T.N.'s deposition of her asserted therapist/patient privilege, T.N. Dep. at 21, and that claim has accordingly been waived. T.N. is hereby ordered to answer all of the questions put to her at her deposition on July 21, 2001 which she refused to answer for any reason, other than the questions specified above, and any and all questions that do not, reasonably construed, directly seek answers that may tend to incriminate her.

## II. The Plaintiff

The defendants point out that the plaintiff's invocation of the Fifth Amendment "conflicts with her prior actions and statements," specifically, in the complaint and in several affidavits that she has filed in this court. Motion at 11. They contend that she "has no privilege whatsoever to shield her from testifying" in this case and that the parent-child privilege which she asserted does not exist. *Id.* at 11, 13. Finally, they assert that the work-product doctrine applies only to documents, not to testimony. *Id*. at 15.

The plaintiff responds that "[h]istoric case law establishing the breadth and depth of the Fifth Amendment supports its application to Plaintiff LaBrecque." Opposition at 10. The only case law she cites, *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55 (1964), and *Boyd v. United States*, 116 U.S. 616, 630 (1886), does nothing of the sort. While each opinion includes stirring language about the principles of the Fifth Amendment in general, neither mentions it in connection with the parent-child relationship and neither can reasonably be stretched far enough to apply to that relationship. The Fifth Amendment privilege is personal; "it adheres basically to the person, not to information that may incriminate him." *Couch v. United States*, 409 U.S. 322, 328 (1973). Further, it has always been the case that an individual may invoke the Fifth Amendment only when the danger of self-incrimination is "real, not remote or speculative." *OSRecovery, Inc.*, 262 F.Supp.2d at 306. If the danger is not

9

readily apparent, the burden of establishing its existence rests on the person claiming the privilege. *Id.* Here, counsel for the plaintiff stated during her deposition that the plaintiff was asserting "[c]ertainly" T.N.'s Fifth Amendment rights and "[t]o the extent that there may be some assertion or potential for some criminal charge against this parent such as aiding and abetting" she was asserting her own. Plaintiff's Dep. at 4. As I have already noted, the plaintiff may not assert T.N.'s Fifth Amendment rights as the basis for refusing to answer questions. In her opposition to the pending motion, the plaintiff makes no attempt to demonstrate that she is in any danger at all of self-incrimination by answering any of the questions of defense counsel. No such danger is readily apparent and she has not carried her burden of establishing its existence. She may not rely on the Fifth Amendment as a basis for refusing to answer any of the questions asked of her at her deposition or any questions reasonably related to her complaint or her statements submitted to this court via affidavit in this case.

The plaintiff discounts the case law cited by the defendants in support of their contention that there is no parent-child privilege that would shield the plaintiff in this case by observing that those cases "all involve testimony in a criminal proceeding[] against adults," they "all involve the assertion of such a privilege outside the context of an in-tact [sic] family living together," and they "all involve testimony of a son or daughter, usually grown, against their parent." Opposition at 11-12. Having made these distinctions, however, she offers no authority in support of her position that such a privilege applies when the parent refuses to answer questions that he or she reasonably believes may lead to evidence that may be used against his or her child, nor does she explain the significance of the distinctions she draws. The State of Maine clearly does not recognize a parent-child privilege when a parent is asked to testify adversely to his or her child. *State v. Willoughby*, 532 A.2d 1020, 1021 (Me. 1987). The Maine Law Court has said that "[a]ny witness who has relevant evidence should be

constitutionally privileged to refuse to testify only if the Constitution guarantees that privilege in express terms . . . or if nonrecognition of the claimed privilege would clearly and substantially impair rights and values protected by the Constitution." *Id*. at 1022. The Law Court found no basis for an intrafamily testimonial privilege in either the federal or the Maine constitution. While the child against whom the parent was required to testify in *Willoughby* was an adult, the Law Court made no mention of that fact in its analysis of the claimed privilege. However, the current version of the complaint (Docket No. 115) includes no claims arising under state law, so federal common law regarding privileges applies. Fed. R. Evid. 501.

None of the distinguishing factors listed by the plaintiff suggests any reason why the alleged privilege should be recognized in the circumstances of this case. In *In re Grand Jury*, 103 F.3d 1140 (3d Cir. 1997), a father asserted a parent-child privilege under Federal Rule of Evidence 501 in order to avoid testifying about conversations he had had with his eighteen-year-old son, *id*. at 1143. The Third Circuit declined to become "the first federal Court of Appeals to recognize a parent-child privilege." *Id*. at 1144. Observing that "no state supreme court has recognized such a privilege," the Third Circuit agreed with "[t]he overwhelming majority of all courts — federal or state — [that] have rejected such a privilege." *Id*. at 1146. The reasons cited by the Third Circuit for its conclusion do not relate to the age of the child involved, whether the testimony is sought from a parent or from a child or whether the family involved is intact. Indeed, the father involved emphasized the closeness of his relationship with his son. *Id*. at 1143.

In *In re Grand Jury Proceedings of Doe*, 842 F.2d 244 (10th Cir. 1988), a fifteen-year-old refused to testify against his mother or other members of his family, asserting a "parent-child" and "family" testimonial privilege, *id*. at 245. Observing that a parent-child privilege was never recognized at common law and had been rejected by each federal circuit court that had considered it,

11

the Tenth Circuit refused to adopt the privilege. *Id*. at 246-48. In *United States v. Davies*, 768 F.2d 893 (7th Cir. 1985), the Seventh Circuit held that "it would be inappropriate to engraft a parent-child privilege into Rule 501," when a teenaged daughter refused to testify against her father on that asserted basis, *id*. at 896, 898. In *United States v. Ismail*, 756 F.2d 1253 (6th Cir. 1985), the Sixth Circuit did base its ruling against the assertion of such a privilege in part on the fact that the son seeking to invoke it was an adult, *id*. at 1258. In *In re Grand Jury Subpoena of Santarelli*, 740 F.2d 816 (11th Cir. 1984), a son whose age was not mentioned and whose relationship with his father and other family members was not described unsuccessfully asserted such a privilege to avoid testifying against his father, *id*. at 817. The Second Circuit, in *In re Matthews*, 714 F.2d 223 (2d Cir. 1983), tersely rejected an attempt to assert such a privilege by a man who sought to avoid answering questions about his in-laws, *id*. at 224-25.

In light of this common-law history, there is no basis for concluding that the First Circuit would adopt a parent-child privilege that every other circuit that has addressed the issue thus far has rejected. The plaintiff may not refuse to testify at deposition on the basis of an asserted parent-child or family privilege.

The plaintiff does not address the work-product doctrine in her opposition to the motion to compel and must therefore be deemed to have abandoned that basis for refusing to answer questions, which was asserted by her counsel in response to the question, "[W]ho have you spoken with regarding law enforcement officers interviewing students of SAD 57?" Plaintiff's Dep. at 15. It appears that the plaintiff later did answer similar questions, stating that she did not recall the names of any such individuals despite having stated in an earlier affidavit that she was able to identify "over a dozen High School students and four Junior High School students who had been [so] interrogated . . . in a few hours time." Opposition at 13. In any event, it is black-letter law that, even when

applicable, the work-product doctrine protects only documents and not the underlying facts and, therefore, may not be used as a shield in response to questions posed during a deposition. Fed. R. Civ. P. 26(b)(3); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).

### III. Jason O'Brien

Counsel for O'Brien stated at his briefly-convened deposition that he would have the same objections on behalf of O'Brien that he had raised on behalf of the plaintiff during her deposition to questions in the same areas of inquiry. O'Brien Dep. at 2. He stated that he would instruct O'Brien not to answer such questions "[b]ased on the mother's and the minor's instructions and requests for advice and guidance." *Id*. at 3. This assertion is somewhat quizzical, because O'Brien could presumably be instructed not to answer a given question only by an attorney who represented him, and not on the basis of instructions from a third party. In any event, to the extent that the instructions to O'Brien not to answer questions similar to those posed to the plaintiff would be based on his own rights under the Fifth Amendment and on the asserted parent-child privilege, neither is sufficient to allow him to refuse to respond. Neither the plaintiff nor O'Brien has presented any factual basis that would allow the drawing of a reasonable inference that O'Brien is exposed to any potential criminal liability or charge arising out of the events of November 2, 2005. Accordingly, he may not invoke the Fifth Amendment in response to questions about those events, for the reasons set forth in my discussion of the plaintiff's attempted invocation of the Fifth Amendment as a basis for refusing to answer such questions.

Nor is it likely that O'Brien could invoke the parent-child privilege even if such a privilege existed in state or federal common law, because he is not T.N.'s parent. The plaintiff does not respond to this assertion by the defendants, Motion at 13, but she has in the past referred to O'Brien as T.N.'s "de facto" parent or "quasi-parent." In the absence of any discussion of the reasons why an

individual who is not even the legal stepparent of a minor child should be able to claim the privileges of a legal parent, let alone the citation of any authority on the point, the mere assertion by the plaintiff, unaccompanied by evidence, that O'Brien has some sort of near-parental relationship with T.N. is not enough to allow him to invoke any privilege based on that status. *See, e.g., Miller v. California*, 355 F.3d 1172, 1176 (9th Cir. 2004) (state law creates *de facto* parent status and determines with what protection that status is endowed, including possible constitutional protection); *C.E.W. v. D.E.W.*, 845 A.2d 1146, 1152 (Me. 2004) (term "de facto parent" under Maine law "must surely be limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life"). In any event, federal common law does not recognize a parent-child or family privilege. O'Brien may not rely on either the Fifth Amendment or the asserted parent-child privilege in responding to any questions during his deposition about the events of November 2, 2005.

### IV. Conclusion

For the foregoing reasons, the defendants' motion to compel the deposition testimony of T.N., the plaintiff and Jason O'Brien is **GRANTED**, with the sole limitation that T.N. may refuse to answer questions on the basis of her Fifth Amendment right not to incriminate herself when that right is reasonably likely to be implicated, as set forth in more detail in the body of this memorandum decision. I expect the defendants to promptly schedule and notice the resumption of the suspended depositions of T.N., the plaintiff and Jason O'Brien. The plaintiff is duly warned that her failure, or that of T.N. or Jason O'Brien, to appear at their re-scheduled depositions and testify thereat in accordance with this memorandum decision and order may result in the imposition of Rule 37 sanctions, including the possible dismissal altogether of this action.

So ordered.

Dated this 30th day of November, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge
